**IN THE FEDERAL DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

YASMEEN ELAGHA,

Plaintiff,

v.

DLA PIPER LLP,

Defendant.

Case No.: 26-cv-5435

Jury Trial Demanded

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, YASMEEN ELAGHA ("Plaintiff"), by and through undersigned

counsel, bringing this Complaint and Jury Demand against Defendant DLA PIPER LLP

("Defendant"), and in support states as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1.   This lawsuit arises under the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981 and

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII")

seeking redress for Defendant's race-based, national origin-based, and religion-based

discrimination, race-based, national origin-based, and religion-based harassment, and retaliation

for Plaintiff's engagement in protected activity.

**JURISDICTION AND VENUE**

2.   Jurisdiction is proper under 28 U.S.C. § 1331 because this action arises under the laws of

the United States.  This action is brought pursuant to 42 U.S.C. §1981 for race discrimination

and retaliation, and under Title VII of the Civil Rights Act of 1964 for race-based, national

origin-based, and religion-based discrimination, harassment, and retaliation.

1

3. Venue is proper under 28 U.S.C. § 1391(b). The parties reside and/or conduct business in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent to jurisdiction have been satisfied.

5. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (attached hereto as Exhibit "A").

6. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

7. This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the EEOC's Dismissal and Notice of Right to Sue.

8. The allegations contained in this Complaint, including Plaintiff's allegations of Defendant's religion-based discriminatory conduct against her, are like or reasonably related to the allegations contained in Plaintiff's EEOC Charge and would reasonably have been expected to grow out of the EEOC's investigation of that charge. *See McKenzie v. Ill. DOT*, 92 F.3d 473, 482 (7th Cir. 1996); *Schwartz v. Bay Indus.*, 274 F. Supp. 2d 1041, 1046 (E.D. Wis. 2003); *Richardson v. Chi. Transit Auth.*, 926 F.3d 881 (7th Cir. 2019).

## THE PARTIES

9. Plaintiff, Yasmeen Elagha ("Plaintiff"), is a Muslim, Arab, Palestinian, and Gazan woman residing in DuPage County, Illinois.

10. Defendant, DLA Piper LLP (US) ("DLA Piper" or "Defendant"), is an international law firm that at all times relevant was conducting business in and for Cook County, Illinois.

## FACTUAL ALLEGATIONS

11. Plaintiff attended Northwestern University Pritzker School of Law and completed her second year of law school by May 2023.

12. On or about May 22, 2023, Defendant hired Plaintiff as a Summer Associate in its Chicago office.

13. Plaintiff is a member of several protected classes due to her race (Arab), national origin (Palestinian), and religion (Muslim).

14. Plaintiff's family were refugees expelled from Palestine due to the Israeli occupation of Palestine.

15. Plaintiff was the only Muslim, Arab, and/or Palestinian Summer Associate in the Chicago office during the relevant time period.

16. Plaintiff was also the only hijab-wearing woman in the Chicago office Summer Associate class and, upon information and belief, across Defendant's Summer Associate class as a whole.

17. Plaintiff did not reveal her identity as a Palestinian, Arab, or Muslim woman at or before the time Defendant hired her.

18. During her employment as a Summer Associate, Plaintiff was repeatedly subjected to unsolicited interrogation by partners and associates regarding her race, ethnicity, national origin, religion, and views concerning Palestine and Israel.

19. Plaintiff did not prompt such conversations.

20. Plaintiff was informed by an associate that discussion and/or support of Palestine was not tolerated within the firm.

21. Plaintiff was further informed that a summer associate who previously worked for Defendant was terminated for discussion and/or support of Palestine.

22. Plaintiff was then warned by an associate of Defendant to keep her identity as a Palestinian hidden from Defendant so as not to face discriminatory conduct as a result of her protected classes.

23. As a result of the intimidating atmosphere within the workplace and fear of discriminatory treatment, Plaintiff concealed the fact that she was Palestinian, and disclosed only that she was Arab and Muslim when inquired.

24. Defendant was aware of Plaintiff's Muslim identity.

25. Plaintiff was the only Summer Associate of Defendant who was a hijab-wearing Muslim.

26. At the start of her employment as a Summer Associate with Defendant, Plaintiff was assigned Defendant's partners Matt Hiller and Eric Roberts as her mentors.

27. Throughout her term as a Summer Associate, Plaintiff repeatedly advocated to Hiller that she wished to participate in shadowing opportunities related to his work.

28. Hiller frequently promised Plaintiff that he would inform her of opportunities to shadow his work, although Hiller failed to invite Plaintiff to shadow his work.

29. Plaintiff was aware that Hiller invited other, similarly-situated Summer Associates outside of her protected classes to shadow his work.

30. Hiller was not assigned to mentor the Summer Associates who he did invite to shadow him, while failing to invite Plaintiff - who he was assigned to mentor.

31. On one occasion, Plaintiff discovered that a fellow Summer Associate (White, non-Muslim) who Hiller was not assigned to mentor had just returned from shadowing a meeting Plaintiff had previously expressed interest in shadowing.

4

32. Hiller had not invited Plaintiff to shadow the meeting.

33. Plaintiff became visibly upset when the fellow Summer Associate informed Plaintiff that she had shadowed Hiller's meeting, and that Hiller had invited her to do so.

34. Similarly, on another occasion, Roberts visited Plaintiff's office and inquired whether Plaintiff was interested in joining him and other of Defendant's employees at a bar to consume alcoholic drinks.

35. Plaintiff informed Roberts that, as a Muslim, she did not consume alcohol, and that she avoided spaces primarily centered around alcoholic consumption as a part of her religious practice.

36. Although Defendant was aware of Plaintiff's religious restriction in consuming alcohol and entering spaces centered around alcoholic consumption, Defendant continued to plan Summer Associate activities heavily centered around alcohol consumption, which Plaintiff was expected to attend.

37. Plaintiff feared that her failure to attend the events Defendant planned for Summer Associates as a result of the events' centering around alcohol would result in Defendant not extending Plaintiff an offer of employment as an Associate Attorney.

38. Defendant also failed entirely to invite Plaintiff to other networking opportunities, which were centered around alcohol.

39. Defendant excluded Plaintiff from the same opportunities other, similarly-situated individuals outside of Plaintiff's protected classes were freely able to participate in.

40. Even before Plaintiff began employment with Defendant, Plaintiff regularly wore a necklace depicting the map of Palestine.

5

41. During her employment with Defendant, Plaintiff intentionally hid her Palestine necklace beneath her clothing while at work and around colleagues due to fear of discriminatory treatment.

42. Despite Plaintiff's efforts to avoid the topic, partners and associates repeatedly engaged Plaintiff in conversations regarding Palestine and Israel.

43. For instance, during a summer associate event at Defendant's Chicago office, Chicago office partner Katrina A. Hausfeld detailed extensively to Plaintiff her support for Israel, her travel to Israel, and Israeli individuals she knew.

44. Plaintiff observed that conversations concerning Israel were directed toward her specifically and not toward other, similarly-situated employees outside of her protected classes.

45. Plaintiff understood these conversations to be directed at her because she was visibly Muslim, known to be Arab, and wore a hijab.

46. Plaintiff successfully completed her Summer Associate position through the conclusion of the program on or about July 28, 2023.

47. On or about August 11, 2023, Defendant extended Plaintiff an offer of full-time employment as an Associate Attorney with a start date of October 7, 2024.

48. Plaintiff accepted Defendant's offer of employment.

49. At the time she accepted the offer, Plaintiff had not disclosed to Defendant that she was Palestinian or Gazan.

50. Beginning in or around October 2023, following the escalation of violence in Gaza, partners and associates at Defendant publicly condemned Palestine and Palestinians.

6

51. Chicago office partner Daniel Fazio publicly equated support for Palestinians with terrorism and referred to Palestinians as "the pro-Hamas movement that's taken over many college campuses."

52. Other partners and associates similarly expressed hostility toward Palestinians and sentiment that was sympathetic to Palestinians.

53. Beginning on or about October 10, 2023, Plaintiff's family members in Gaza experienced catastrophic harm as a result of the ongoing conflict.

54. More than 200 of Plaintiff's family members were killed, displaced, or taken hostage in Gaza, including immediate relatives who are American citizens.

55. Plaintiff publicly advocated on behalf of her family and spoke publicly regarding their treatment and conditions in Gaza, including on national television, radio, podcasts, and across several social media platforms.

56. In doing so, Plaintiff identified herself publicly as Muslim, Arab, Palestinian, and Gazan.

57. On or about November 1, 2023, Defendant signed and sent a letter to law school deans, including the dean of Northwestern University Pritzker School of Law, expressing support for Israel and warning of potential recruiting consequences for students who did not take "the same unequivocal stance" in reference to an anti-Palestinian sentiment.

58. On or about November 16, 2023, Plaintiff participated in a peaceful Palestine-related event at Northwestern University's law campus.

59. Following the protest, Plaintiff was subjected to harassment by other students, including Melody Mostow.

60. Beginning in or around March 2024, Plaintiff noticed that Defendant stopped responding to her communications.

7

61. Defendant's failure to communicate with Plaintiff was inconsistent with its prior conduct.

62. Plaintiff's emails to Defendant frequently went unanswered despite repeated follow-up attempts.

63. For instance, in or around April 2024, Plaintiff applied to Defendant's Krantz Fellowship.

64. Plaintiff had previously extensively informed Defendant of her interest in the Krantz Fellowship.

65. Plaintiff began networking with Defendant regarding the Krantz Fellowship as early as her interview process in or around August 2023 following her first year of law school.

66. Plaintiff expressed her interest in the Krantz Fellowship repeatedly, from her interview after her first year of law school, throughout her second year of law school, during her term as Summer Associate from approximately May 2023 through approximately July 2024, and throughout her third year of law school, including by networking with Anne Geraghty Helms and attending a pro-bono award lunch on behalf of Defendant during the term of her role as a Summer Associate.

67. Before October 7, 2023, when Plaintiff expressed her interest in the Krantz Fellowship to Defendant, Defendant expressed support and encouraged Plaintiff to apply.

68. After October 7, 2023, and despite Defendant's previous support and encouragement of Plaintiff to apply for the role, Defendant disregarded Plaintiff's application for the Krantz Fellowship.

69. Plaintiff followed up on her application status, but Defendant ignored her outreach attempts.

70. Shortly after, Defendant sent incoming associate attorneys communications requesting information necessary for receipt of summer stipends and onboarding in advance of the October 2024 start date.

71. Defendant failed to send those necessary onboarding communications to Plaintiff.

72. Plaintiff, puzzled by Defendant's lack of communication with her, contacted her former fellow Summer Associates to inquire if anyone else had not received the necessary onboarding email.

73. Plaintiff's former Summer Associate colleagues did not express any issue with receiving necessary communications from Defendant.

74. Plaintiff's former Summer Associate colleagues were outside of her protected classes.

75. In or around May 2024, a reporter contacted Plaintiff regarding false allegations fabricated by Northwestern Law students that Plaintiff had allegedly assaulted a fellow student, Melody Mostow, during a Palestine-related event on Northwestern University's law campus.

76. Plaintiff denied the allegations and requested that Northwestern University intervene to clarify the matter.

77. Northwestern University informed the reporter that an investigation was completed in or around November 2023, which determined that no assault at all had occurred, and that the allegations were false.

78. Upon information and belief, Northwestern University's Office of Civil Rights reviewed video footage of the alleged November 2023 incident and determined that no physical contact occurred and that Plaintiff had violated no university policy.

79. Plaintiff further learned that Melody Mostow admitted in or around November 2023 that any contact that may have occurred was  accidental.

80. On or about May 21, 2024, reporter Tony Kinnett published an article in The Daily Signal falsely accusing Plaintiff of alleged assault, despite the absence of any finding that Plaintiff had committed any misconduct.

81. On or about June 14, 2024, Plaintiff submitted a New Hire Questionnaire to Defendant at Defendant's request.

82. The submission included an addendum listing Plaintiff's public speaking engagements and publications concerning Gaza and her advocacy on behalf of her Palestinian family members.

83. The addendum also identified Plaintiff as Palestinian, Gazan, Arab, and Muslim.

84. This was the first time Plaintiff directly disclosed to Defendant that she was Palestinian and Gazan.

85. Less than one month later, on or about July 10, 2024, Defendant terminated Plaintiff's employment before her scheduled start date, and just two days before Plaintiff was set to receive the summer stipend she depended on to support herself.

86. Defendant alleged that Plaintiff failed to disclose a purported criminal claim or allegation against her in connection with the New Hire Questionnaire.

87. Plaintiff has never been charged with a crime.

88. Plaintiff has never been notified by any law enforcement agency of any criminal allegation or criminal charge against her.

89. On the same day as her termination, Plaintiff protested the decision to Kelly Neiman, Defendant's Chief Human Resources Officer.

90. On or about July 11, 2024, Neiman reaffirmed Defendant's termination decision.

91. On or about July 26, 2024, Northwestern University Pritzker School of Law Dean Hari Osofsky sent a written letter to Defendant confirming that Plaintiff had never been the subject of a criminal charge or criminal allegation and refuting the accusations relied upon by Defendant.

92. On or about July 29, 2024, Plaintiff again protested her termination in writing to Defendant's Partner and General Counsel, Elisha King.

93. On or about August 7, 2024, King maintained Defendant's decision to terminate Plaintiff.

94. Plaintiff again requested clarification regarding the basis for her termination.

95. On or about August 12, 2024, King again maintained Defendant's termination decision and informed Plaintiff that "[t]he submissions received more recently did not change the firm's view of [her] candidacy."

96. Since Plaintiff's termination, Defendant has continued to tolerate and promote anti-Palestinian and anti-Muslim sentiment within the workplace.

97. On or about November 21, 2024, Defendant hosted a Continuing Legal Education seminar entitled "Holding Universities Accountable: How Litigation Can Provide Solutions to Antisemitism on Campus."

98. During the seminar, the speaker referred to Palestinians as "devils."

99. The speaker also cited Northwestern University, where Plaintiff was a Palestinian student, as an example of a university failing to punish support for Palestinians.

100. The speaker further associated Muslim, Arab, and Palestinian organizations with terrorism.

101. Since her termination, Plaintiff repeatedly attempted to obtain a copy of her personnel file from Defendant pursuant to the Illinois Personnel Record Review Act, 820 ILCS 40/2.

102. Defendant ignored Plaintiff's attempts to obtain her personnel file and failed to timely provide Plaintiff with her personnel file despite repeated requests.

103. Defendant discriminated against Plaintiff because of her race, religion, and national origin, subjected her to a hostile work environment, and retaliated against her for engaging in protected activity, including advocacy concerning Palestine and opposition to discriminatory conduct.

**COUNT I**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e et seq.**
**(Race-Based Discrimination)**

104. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

105. Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees and applicants for employment on the basis of race.

106. As an Arab, Plaintiff is a member of a protected class based on her race.

107. At all relevant times, Plaintiff was qualified for the position of Associate Attorney with Defendant.

108. Plaintiff successfully completed Defendant's Summer Associate program and received and accepted an offer for full-time employment as an Associate Attorney.

109. Plaintiff performed satisfactorily throughout her employment with Defendant and met Defendant's legitimate expectations.

110. Defendant subjected Plaintiff to discriminatory treatment because of her race, including because she was Arab.

111. During Plaintiff's employment and candidacy for full-time employment, Defendant's partners and associates repeatedly interrogated Plaintiff regarding her race, ethnicity, and background.

112. Plaintiff was informed that discussion or support of Palestine was not tolerated within the firm.

113. In fact, Plaintiff was explicitly warned against mentioning her Palestinian background so as to avoid adverse action against her by Defendant.

114. Plaintiff was also prevented from opportunities to shadow based on her religion and race.

115. Other, similarly situated individuals who were not Muslim and not Arab were invited to participate in shadowing opportunities, while Plaintiff was not.

116. Defendant's employees repeatedly directed conversations regarding Palestine and Israel toward Plaintiff because she was visibly Arab.

117. Defendant's partners and employees expressed hostility toward Palestinians and individuals perceived to support Palestinians.

118. Defendant fostered and tolerated a workplace atmosphere hostile toward Palestinians and Arabs.

119. Plaintiff concealed her Palestinian identity while employed as a Summer Associate because she feared discriminatory treatment from Defendant and its employees.

120. After Plaintiff publicly advocated for Palestinians and directly disclosed to Defendant that she was Palestinian and Gazan, Defendant materially changed its treatment of Plaintiff.

121. Defendant stopped communicating with Plaintiff in the ordinary course regarding her onboarding and employment.

122. Defendant excluded Plaintiff from communications sent to similarly situated incoming associates.

123. Less than one month after Plaintiff directly disclosed her race and national origin to Defendant, Defendant terminated Plaintiff's employment.

124. Defendant claimed that Plaintiff failed to disclose a purported criminal allegation against her despite the fact that Plaintiff had never been charged with a crime and no criminal proceedings existed against her.

125. Defendant's stated reason for terminating Plaintiff was false, pretextual, and not honestly believed.

126. Similarly situated non-Arab and non-Palestinian employees and applicants were treated more favorably than Plaintiff.

127. Defendant's actions were motivated, at least in part, by discriminatory animus toward Plaintiff because she was Arab and Palestinian.

128. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered loss of employment, loss of future earnings and benefits, emotional distress, humiliation, reputational harm, and other compensatory damages.

129. Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and award all relief available under Title VII, including but not limited to:

a. Back pay, front pay, lost benefits, and other actual damages;

b. Compensatory damages;

c. Punitive damages;

14

d. Pre- and post-judgment interest;

e. Attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

f. Injunctive and equitable relief as permitted by law; and

g. Such other and further relief as this Court deems just and proper.

**COUNT II**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e et seq.**
**(National Origin-Based Discrimination)**

130. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

131. Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees and applicants for employment on the basis of national origin.

132. As a Palestinian from Gaza, Plaintiff is a member of a protected class based on her national origin.

133. At all relevant times, Plaintiff was qualified for the position of Associate Attorney with Defendant.

134. Plaintiff successfully completed Defendant's Summer Associate program and received and accepted an offer for full-time employment as an Associate Attorney.

135. Plaintiff performed satisfactorily throughout her employment with Defendant and met Defendant's legitimate expectations.

136. Defendant discriminated against Plaintiff because of her Palestinian national origin.

137. During Plaintiff's employment, Defendant's partners and associates repeatedly interrogated Plaintiff concerning her ancestry, ethnicity, and background.

138. Defendant's employees repeatedly initiated conversations with Plaintiff regarding Palestine and Israel because of Plaintiff's perceived and actual national origin.

15

139. Defendant fostered and tolerated hostility toward Palestinians and individuals associated with Palestine and Gaza.

140. Plaintiff feared discriminatory treatment based on her Palestinian identity and therefore concealed the fact that she was Palestinian during portions of her employment with Defendant.

141. Defendant's employees expressed hostility toward Palestinians and publicly equated Palestinians with terrorism.

142. Defendant signed and circulated communications condemning support for Palestinians and threatening professional consequences for law students who did not adopt Defendant's sentiments against Palestine.

143. Plaintiff publicly advocated on behalf of her family members in Gaza and identified herself publicly as Palestinian and Gazan.

144. After Plaintiff publicly advocated for Palestinians and directly disclosed to Defendant that she was Palestinian and Gazan, Defendant materially changed its treatment of Plaintiff.

145. Defendant stopped communicating with Plaintiff in the ordinary course regarding her onboarding and employment.

146. Defendant excluded Plaintiff from communications sent to similarly situated incoming associates.

147. Less than one month after Plaintiff directly disclosed her Palestinian and Gazan identity to Defendant, Defendant terminated Plaintiff's employment.

148. Defendant's proffered explanation for Plaintiff's termination was false, pretextual, and not honestly believed.

16

149. Similarly situated employees and applicants outside Plaintiff's protected national origin groups were treated more favorably than Plaintiff.

150. Defendant's conduct was motivated, at least in part, by discriminatory animus toward Plaintiff because of her Palestinian national origin.

151. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered loss of employment, loss of future earnings and benefits, emotional distress, humiliation, reputational harm, and other compensatory damages.

152. Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and award all relief available under Title VII, including but not limited to:

a. Back pay, front pay, lost benefits, and other actual damages;

b. Compensatory damages;

c. Punitive damages;

d. Pre- and post-judgment interest;

e. Attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

f. Injunctive and equitable relief as permitted by law; and

g. Such other and further relief as this Court deems just and proper.

## COUNT III
### Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e et seq.
### (Religion-Based Discrimination)

153. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

154. Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees and applicants for employment on the basis of religion.

155. Plaintiff is Muslim and is therefore a member of a protected class under Title VII.

156. Plaintiff visibly practiced her religion by wearing a hijab.

157. At all relevant times, Plaintiff was qualified for the position of Associate Attorney with Defendant.

158. Plaintiff successfully completed Defendant's Summer Associate program and received and accepted an offer for full-time employment as an Associate Attorney.

159. Plaintiff performed satisfactorily throughout her employment with Defendant and met Defendant's legitimate expectations.

160. Plaintiff was the only hijab-wearing employee in Defendant's Summer Associate class in the Chicago office.

161. During Plaintiff's employment and candidacy for employment, Defendant's partners and associates repeatedly questioned Plaintiff regarding her identity, beliefs, and views concerning Palestine and Israel.

162. Defendant had knowledge of Plaintiff's religious restrictions regarding consumption of alcohol and entering spaces centered around consumption of alcohol.

163. Defendant continued to host events that Plaintiff was expected to attend at venues that centered around consumption of alcohol where there existed an expectation to consume alcohol.

164. Further, Defendant continued to plan networking opportunities centered around the consumption of alcohol and failed to invite Plaintiff altogether, rather than host the same events in spaces and settings that did not center around alcohol.

165. Plaintiff was also prevented from opportunities to shadow based on her religion and race.

166. Other, similarly situated individuals who were not Muslim and not Arab were invited to participate in shadowing opportunities, while Plaintiff was not.

167. Defendant's employees directed conversations concerning Palestine and Israel toward Plaintiff because she was visibly Muslim and wore a hijab.

168. Plaintiff understood these interactions to be directed at her because of her religion and visible religious expression.

169. Defendant fostered and tolerated hostility toward Muslims and individuals perceived to support Palestinians.

170. Defendant's partners and employees publicly equated support for Palestinians with terrorism and associated Muslim and Palestinian organizations with terrorism.

171. Plaintiff publicly advocated on behalf of her family in Gaza and publicly identified herself as Muslim.

172. Plaintiff also disclosed to Defendant, through onboarding materials and related submissions, that she was Muslim.

173. Shortly after Plaintiff publicly and directly identified herself to Defendant as Muslim, Defendant materially changed its treatment of Plaintiff.

174. Defendant ceased ordinary communications with Plaintiff and excluded Plaintiff from onboarding communications provided to similarly situated incoming associates.

175. On or about July 10, 2024, Defendant terminated Plaintiff's employment.

176. Defendant's stated reason for terminating Plaintiff was false, pretextual, and not honestly believed.

19

177.     Defendant's conduct toward Plaintiff was motivated, at least in part, by discriminatory animus toward Plaintiff because she is Muslim.

178.     Similarly situated non-Muslim employees and applicants were treated more favorably than Plaintiff.

179.     Defendant further tolerated and promoted an atmosphere hostile toward Muslims.

180.     As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered loss of employment, loss of future earnings and benefits, emotional distress, humiliation, reputational harm, and other compensatory damages.

181.     Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and award all relief available under Title VII, including but not limited to:

a. Back pay, front pay, lost benefits, and other actual damages;

b. Compensatory damages;

c. Punitive damages;

d. Pre- and post-judgment interest;

e. Attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

f. Injunctive and equitable relief as permitted by law; and

g. Such other and further relief as this Court deems just and proper.

### COUNT IV
### Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e et seq.
### (Retaliation)

182. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

183. Title VII of the Civil Rights Act of 1964 prohibits employers from retaliating against employees and applicants for employment because they engaged in protected activity.

184. Plaintiff engaged in protected activity under Title VII.

185. Plaintiff opposed discriminatory treatment and discriminatory hostility directed toward Palestinians, Arabs, and Muslims.

186. Plaintiff publicly advocated on behalf of Palestinians and her family members in Gaza.

187. Plaintiff publicly identified herself as Muslim, Arab, Palestinian, and Gazan while engaging in advocacy concerning matters affecting Palestinians and Muslims.

188. Plaintiff also opposed and challenged false allegations made against her concerning alleged misconduct at Northwestern University.

189. Plaintiff reported and disputed accusations that she had assaulted another student and sought institutional review and investigation of those accusations.

190. Northwestern University investigated the allegations and determined that no assault occurred and that Plaintiff had violated no university policy.

191. Defendant was aware of Plaintiff's protected activities.

192. Defendant became aware of Plaintiff's advocacy and public identification as Palestinian, Gazan, Arab, and Muslim no later than June 14, 2024, when Plaintiff submitted onboarding materials and related disclosures to Defendant.

193. Plaintiff's disclosures included publications, speaking engagements, and advocacy concerning Palestine and Gaza.

21

194. After learning of Plaintiff's protected activity, Defendant materially changed its treatment of Plaintiff.

195. Defendant ceased ordinary communications with Plaintiff.

196. Defendant excluded Plaintiff from onboarding and employment-related communications sent to similarly situated incoming associates.

197. Defendant scrutinized Plaintiff differently from similarly situated employees and applicants who did not engage in comparable protected activity.

198. On or about July 10, 2024, Defendant terminated Plaintiff's employment.

199. Defendant asserted that Plaintiff failed to disclose a purported criminal matter despite the fact that Plaintiff had never been charged with any crime.

200. Defendant's proffered reason for terminating Plaintiff was false, pretextual, and not honestly believed.

201. Defendant ignored or refused to credit information establishing that Plaintiff had not engaged in criminal misconduct, including information provided by Northwestern University School of Law.

202. Plaintiff further engaged in protected activity when she protested her termination and challenged Defendant's stated justification for its actions.

203. Plaintiff complained to Defendant's Chief Human Resources Officer and General Counsel that Defendant's actions were wrongful and unsupported.

204. Defendant nevertheless reaffirmed and maintained Plaintiff's termination.

205. The temporal proximity between Plaintiff's protected activity and Defendant's adverse actions supports an inference of retaliatory motive.

206.    Defendant's actions would dissuade a reasonable employee or applicant from engaging in protected activity.

207.    Defendant retaliated against Plaintiff because she engaged in protected activity protected by Title VII.

208.    As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered loss of employment, loss of future earnings and benefits, emotional distress, humiliation, reputational harm, and other compensatory damages.

209.    Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and award all relief available under Title VII, including but not limited to:

a. Back pay, front pay, lost benefits, and other actual damages;

b. Compensatory damages;

c. Punitive damages;

d. Pre- and post-judgment interest;

e. Attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

f. Injunctive and equitable relief as permitted by law; and

g. Such other and further relief as this Court deems just and proper.

**COUNT V**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e et seq.**
**(Race-Based Hostile Work Environment)**

210.    Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

23

211. Title VII of the Civil Rights Act of 1964 prohibits employers from subjecting employees and applicants to a hostile work environment because of race, religion, and national origin.

212. Plaintiff is a member of protected classes based on her race, religion, and national origin, including because she is Arab, Palestinian, Gazan, and Muslim.

213. During her employment and candidacy for employment with Defendant, Plaintiff was subjected to unwelcome harassment based on her race, religion, and national origin.

214. Plaintiff was the only Muslim, Arab, and Palestinian Summer Associate in Defendant's Chicago office and the only hijab-wearing woman in her Summer Associate class.

215. Defendant's partners and associates repeatedly interrogated Plaintiff regarding her race, religion, ethnicity, ancestry, and views concerning Palestine and Israel.

216. Plaintiff was informed by an associate that discussion or support of Palestine was not tolerated within the firm.

217. Defendant's employees repeatedly directed discussions regarding Palestine and Israel toward Plaintiff because she was visibly Muslim, wore a hijab, and was perceived to be Arab.

218. Defendant had knowledge of Plaintiff's religious restrictions regarding consumption of alcohol and entering spaces centered around consumption of alcohol.

219. Defendant continued to host events that Plaintiff was expected to attend at venues that centered around consumption of alcohol where there existed an expectation to consume alcohol.

220. Further, Defendant continued to plan networking opportunities centered around the consumption of alcohol and failed to invite Plaintiff altogether, rather than host the same events in spaces and settings that did not center around alcohol.

221.    Plaintiff was also prevented from opportunities to shadow based on her religion and race.

222.    Other, similarly situated individuals who were not Muslim and not Arab were invited to participate in shadowing opportunities, while Plaintiff was not.

223.    Plaintiff was forced to conceal her Palestinian identity while employed by Defendant because she feared discriminatory treatment and hostility within the workplace.

224.    Plaintiff hid a necklace depicting the map of Palestine beneath her clothing while at work due to fear of discriminatory treatment.

225.    Defendant's partners and employees publicly expressed hostility toward Palestinians and individuals perceived to support Palestinians.

226.    Defendant employees equated Palestinians with terrorism.

227.    Defendant fostered and tolerated workplace hostility toward Palestinians, Arabs, and Muslims.

228.    Defendant further reinforced this hostile atmosphere by publicly condemning support for Palestinians and threatening professional consequences for law students who did not adopt Defendant's stance against Palestine.

229.    Following the escalation of violence in Gaza, Plaintiff's family members suffered catastrophic harm, including death, displacement, and detention.

230.    During this same period, Defendant's employees continued to express hostility toward Palestinians and hostility towards those supporting Palestinians.

231.    Plaintiff publicly advocated on behalf of her family members and identified herself as Palestinian, Gazan, Arab, and Muslim.

232. After Plaintiff disclosed her Palestinian and Gazan identity directly to Defendant, Defendant materially changed its treatment of Plaintiff.

233. Defendant ceased ordinary communications with Plaintiff and excluded Plaintiff from onboarding and employment-related communications.

234. Defendant ultimately terminated Plaintiff's employment under false and pretextual circumstances.

235. Defendant's hostile environment continued even after Plaintiff's termination.

236. On or about November 21, 2024, Defendant hosted a Continuing Legal Education seminar entitled "Holding Universities Accountable: How Litigation Can Provide Solutions to Antisemitism on Campus."

237. During the seminar, the speaker referred to Palestinians as "devils."

238. The speaker further associated Muslim, Arab, and Palestinian organizations with terrorism.

239. Defendant tolerated, endorsed, and perpetuated these discriminatory sentiments within its professional environment.

240. The harassment and hostility directed toward Plaintiff were severe and pervasive.

241. The conduct unreasonably interfered with Plaintiff's employment, altered the conditions of her employment, and created an intimidating, hostile, and offensive working environment.

242. Defendant knew or should have known about the discriminatory harassment and hostile work environment.

243. Defendant failed to take reasonable steps to prevent or correct the discriminatory conduct.

26

244. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered loss of employment, emotional distress, humiliation, anxiety, reputational harm, and other compensatory damages.

245. Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and award all relief available under Title VII, including but not limited to:

a. Back pay, front pay, lost benefits, and other actual damages;

b. Compensatory damages;

c. Punitive damages;

d. Pre- and post-judgment interest;

e. Attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

f. Injunctive and equitable relief as permitted by law; and

g. Such other and further relief as this Court deems just and proper.

## COUNT VI
### Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e et seq.
### (National Origin-Based Hostile Work Environment)

246. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

247. Title VII of the Civil Rights Act of 1964 prohibits employers from subjecting employees and applicants to a hostile work environment because of race, religion, and national origin.

27

248. Plaintiff is a member of protected classes based on her race, religion, and national origin, including because she is Arab, Palestinian, Gazan, and Muslim.

249. During her employment and candidacy for employment with Defendant, Plaintiff was subjected to unwelcome harassment based on her race, religion, and national origin.

250. Plaintiff was the only Muslim, Arab, and Palestinian Summer Associate in Defendant's Chicago office and the only hijab-wearing woman in her Summer Associate class.

251. Defendant's partners and associates repeatedly interrogated Plaintiff regarding her race, religion, ethnicity, ancestry, and views concerning Palestine and Israel.

252. Plaintiff was informed by an associate that discussion or support of Palestine was not tolerated within the firm.

253. In fact, Plaintiff was warned against revealing her Palestinian identity so as to avoid adverse action by Defendant against her.

254. Defendant's employees repeatedly directed discussions regarding Palestine and Israel toward Plaintiff because she was visibly Muslim, wore a hijab, and was perceived to be Arab.

255. Defendant had knowledge of Plaintiff's religious restrictions regarding consumption of alcohol and entering spaces centered around consumption of alcohol.

256. Defendant continued to host events that Plaintiff was expected to attend at venues that centered around consumption of alcohol where there existed an expectation to consume alcohol.

257. Further, Defendant continued to plan networking opportunities centered around the consumption of alcohol and failed to invite Plaintiff altogether, rather than host the same events in spaces and settings that did not center around alcohol.

28

258.    Plaintiff was also prevented from opportunities to shadow based on her religion and race.

259.    Other, similarly situated individuals who were not Muslim and not Arab were invited to participate in shadowing opportunities, while Plaintiff was not.

260.    Plaintiff was forced to conceal her Palestinian identity while employed by Defendant because she feared discriminatory treatment and hostility within the workplace.

261.    Plaintiff hid a necklace depicting the map of Palestine beneath her clothing while at work due to fear of discriminatory treatment.

262.    Defendant's partners and employees publicly expressed hostility toward Palestinians and hostility towards those supporting Palestinians.

263.    Defendant employees equated Palestinians with terrorism.

264.    Defendant fostered and tolerated workplace hostility toward Palestinians, Arabs, and Muslims.

265.    Defendant further reinforced this hostile atmosphere by publicly condemning support for Palestinians and threatening professional consequences for law students who did not adopt Defendant's sentiments against Palestine.

266.    Following the escalation of violence in Gaza, Plaintiff's family members suffered catastrophic harm, including death, displacement, and detention.

267.    During this same period, Defendant's employees continued to express hostility toward Palestinians and hostility towards those supporting Palestinians.

268.    Plaintiff publicly advocated on behalf of her family members and identified herself as Palestinian, Gazan, Arab, and Muslim.

269. After Plaintiff disclosed her Palestinian and Gazan identity directly to Defendant, Defendant materially changed its treatment of Plaintiff.

270. Defendant ceased ordinary communications with Plaintiff and excluded Plaintiff from onboarding and employment-related communications.

271. Defendant ultimately terminated Plaintiff's employment under false and pretextual circumstances.

272. Defendant's hostile environment continued even after Plaintiff's termination.

273. On or about November 21, 2024, Defendant hosted a Continuing Legal Education seminar entitled "Holding Universities Accountable: How Litigation Can Provide Solutions to Antisemitism on Campus."

274. During the seminar, the speaker referred to Palestinians as "devils."

275. The speaker further associated Muslim, Arab, and Palestinian organizations with terrorism.

276. Defendant tolerated, endorsed, and perpetuated these discriminatory sentiments within its professional environment.

277. The harassment and hostility directed toward Plaintiff were severe and pervasive.

278. The conduct unreasonably interfered with Plaintiff's employment, altered the conditions of her employment, and created an intimidating, hostile, and offensive working environment.

279. Defendant knew or should have known about the discriminatory harassment and hostile work environment.

280. Defendant failed to take reasonable steps to prevent or correct the discriminatory conduct.

30

281. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered loss of employment, emotional distress, humiliation, anxiety, reputational harm, and other compensatory damages.

282. Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and award all relief available under Title VII, including but not limited to:

a. Back pay, front pay, lost benefits, and other actual damages;

b. Compensatory damages;

c. Punitive damages;

d. Pre- and post-judgment interest;

e. Attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

f. Injunctive and equitable relief as permitted by law; and

g. Such other and further relief as this Court deems just and proper.

### COUNT VII
### Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e et seq.
### (Religion-Based Hostile Work Environment)

283. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

284. Title VII of the Civil Rights Act of 1964 prohibits employers from subjecting employees and applicants to a hostile work environment because of race, religion, and national origin.

31

285. Plaintiff is a member of protected classes based on her race, religion, and national origin, including because she is Arab, Palestinian, Gazan, and Muslim.

286. During her employment and candidacy for employment with Defendant, Plaintiff was subjected to unwelcome harassment based on her race, religion, and national origin.

287. Plaintiff was the only Muslim, Arab, and Palestinian Summer Associate in Defendant's Chicago office and the only hijab-wearing woman in her Summer Associate class.

288. Defendant's partners and associates repeatedly interrogated Plaintiff regarding her race, religion, ethnicity, ancestry, and views concerning Palestine and Israel.

289. Plaintiff was informed by an associate that discussion or support of Palestine was not tolerated within the firm.

290. In fact, Plaintiff was explicitly warned against revealing her Palestinian identity so as to avoid adverse action by Defendant against her.

291. Plaintiff was targeted for such warnings because of her visible Muslim identity, as Palestine is a predominantly Muslim country.

292. Defendant's employees repeatedly directed discussions regarding Palestine and Israel toward Plaintiff because she was visibly Muslim, wore a hijab, and was perceived to be Arab.

293. Defendant had knowledge of Plaintiff's religious restrictions regarding consumption of alcohol and entering spaces centered around consumption of alcohol.

294. Defendant continued to host events that Plaintiff was expected to attend at venues that centered around consumption of alcohol where there existed an expectation to consume alcohol.

295. Further, Defendant continued to plan networking opportunities centered around the consumption of alcohol and failed to invite Plaintiff altogether, rather than host the same events in spaces and settings that did not center around alcohol.

296. Plaintiff was also prevented from opportunities to shadow based on her religion and race.

297. Other, similarly situated individuals who were not Muslim and not Arab were invited to participate in shadowing opportunities, while Plaintiff was not.

298. Plaintiff was forced to conceal her Palestinian identity while employed by Defendant because she feared discriminatory treatment and hostility within the workplace.

299. Plaintiff hid a necklace depicting the map of Palestine beneath her clothing while at work due to fear of discriminatory treatment.

300. Defendant's partners and employees publicly expressed hostility toward Palestinians and hostility towards those supporting Palestinians.

301. Defendant employees equated Palestinians with terrorism.

302. Defendant fostered and tolerated workplace hostility toward Palestinians, Arabs, and Muslims.

303. Defendant further reinforced this hostile atmosphere by publicly condemning support for Palestinians and threatening professional consequences for law students who did not adopt Defendant's sentiment against Palestine.

304. Following the escalation of violence in Gaza, Plaintiff's family members suffered catastrophic harm, including death, displacement, and detention.

305. During this same period, Defendant's employees continued to express hostility toward Palestinians and Palestinian advocacy.

33

306. Plaintiff publicly advocated on behalf of her family members and identified herself as Palestinian, Gazan, Arab, and Muslim.

307. After Plaintiff disclosed her Palestinian and Gazan identity directly to Defendant, Defendant materially changed its treatment of Plaintiff.

308. Defendant ceased ordinary communications with Plaintiff and excluded Plaintiff from onboarding and employment-related communications.

309. Defendant ultimately terminated Plaintiff's employment under false and pretextual circumstances.

310. Defendant's hostile environment continued even after Plaintiff's termination.

311. On or about November 21, 2024, Defendant hosted a Continuing Legal Education seminar entitled "Holding Universities Accountable: How Litigation Can Provide Solutions to Antisemitism on Campus."

312. During the seminar, the speaker referred to Palestinians as "devils."

313. The speaker further associated Muslim, Arab, and Palestinian organizations with terrorism.

314. Defendant tolerated, endorsed, and perpetuated these discriminatory sentiments within its professional environment.

315. The harassment and hostility directed toward Plaintiff were severe and pervasive.

316. The conduct unreasonably interfered with Plaintiff's employment, altered the conditions of her employment, and created an intimidating, hostile, and offensive working environment.

317. Defendant knew or should have known about the discriminatory harassment and hostile work environment.

318.     Defendant failed to take reasonable steps to prevent or correct the discriminatory conduct.

319.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered loss of employment, emotional distress, humiliation, anxiety, reputational harm, and other compensatory damages.

320.     Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and award all relief available under Title VII, including but not limited to:

a. Back pay, front pay, lost benefits, and other actual damages;

b. Compensatory damages;

c. Punitive damages;

d. Pre- and post-judgment interest;

e. Attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

f. Injunctive and equitable relief as permitted by law; and

g. Such other and further relief as this Court deems just and proper.

### COUNT VIII
**Violation of 42 U.S.C. §1981**
**(Race-Based Discrimination)**

321.     Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

322.     §1981 guarantees all persons within the United States the same right to make and enforce contracts as is enjoyed by white citizens.

323. Section 1981 prohibits intentional race discrimination in the making, performance, modification, and termination of contracts, including employment contracts.

324. Plaintiff is Arab and Palestinian and is therefore a member of protected racial and ethnic groups within the meaning of 42 U.S.C. §1981.

325. Plaintiff entered into a contractual employment relationship with Defendant when Defendant hired Plaintiff as a Summer Associate and later extended Plaintiff an offer of full-time employment as an Associate Attorney.

326. Plaintiff accepted Defendant's offer of employment and possessed enforceable contractual rights arising from that employment relationship.

327. Plaintiff successfully performed her duties as a Summer Associate and met Defendant's legitimate expectations.

328. Defendant intentionally discriminated against Plaintiff because she was Arab and Palestinian.

329. During Plaintiff's employment and candidacy for full-time employment, Defendant's partners and associates repeatedly interrogated Plaintiff regarding her race and national origin and directed discussions concerning Israel toward her.

330. Plaintiff was informed that support for or discussion of Palestine was not tolerated within the firm.

331. Plaintiff was explicitly warned not to reveal her Palestinian identity in order to avoid discrimination by Defendant.

332. Defendant's employees publicly expressed hostility toward Palestinians and associated Palestinians with terrorism.

333. Plaintiff feared discriminatory treatment because she was Palestinian and therefore concealed her Palestinian identity during portions of her employment with Defendant.

334. Plaintiff publicly advocated on behalf of her family in Gaza and publicly identified herself as Muslim.

335. After receiving her offer of employment as an Associate Attorney, Plaintiff disclosed to Defendant, through public media, onboarding materials, and related submissions, that she was Palestinian and Gazan.

336. Shortly after Plaintiff publicly identified herself to Defendant as Palestinian and Gazan, Defendant materially changed its treatment of Plaintiff.

337. Defendant ceased ordinary communications with Plaintiff and excluded Plaintiff from onboarding communications provided to similarly-situated incoming associates.

338. On or about July 10, 2024, Defendant terminated Plaintiff's employment and contractual relationship.

339. Defendant's stated reason for terminating Plaintiff was false, pretextual, and not honestly believed.

340. Plaintiff's race and ethnicity were a but-for cause of Defendant's adverse actions against her.

341. Similarly situated non-Arab and non-Palestinian employees and applicants were treated more favorably than Plaintiff.

342. Defendant intentionally interfered with Plaintiff's right to make, perform, enforce, and enjoy the benefits of her contractual employment relationship on equal terms as white employees and applicants.

37

343. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered loss of employment, loss of future earnings and benefits, emotional distress, humiliation, reputational harm, and other compensatory damages.

344. Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and award all relief available under 42 U.S.C. §1981, including but not limited to:

a. Back pay, front pay, lost benefits, and other actual damages;

b. Compensatory damages;

c. Punitive damages;

d. Pre- and post-judgment interest;

e. Attorneys' fees and costs;

f. Injunctive and equitable relief as permitted by law; and

g. Such other and further relief as this Court deems just and proper.

### COUNT IX
### Violation of 42 U.S.C. § 1981
### (Race-Based and National Origin-Based Retaliation)

345. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

346. §1981 prohibits retaliation against individuals who oppose race discrimination or who engage in protected activity related to the rights secured by 42 U.S.C. §1981.

347. Plaintiff engaged in protected activity by opposing discriminatory treatment directed toward Arabs and Palestinians.

348. Plaintiff publicly advocated on behalf of Palestinians and her family members in Gaza.

349. Plaintiff publicly identified herself as Arab, Palestinian, and Gazan while engaging in advocacy concerning Palestine and Gaza.

350. Plaintiff also opposed and challenged false accusations of misconduct made against her in connection with protests concerning Palestine.

351. Plaintiff reported and disputed allegations that she assaulted another student and sought institutional review and investigation of those allegations.

352. Northwestern University informed Defendant that it investigated the allegations and determined that no assault occurred and that Plaintiff had violated no university policy.

353. Defendant was aware of Plaintiff's protected activities and advocacy.

354. Defendant became aware of Plaintiff's Palestinian identity and advocacy no later than June 14, 2024, when Plaintiff submitted onboarding materials and related disclosures identifying herself as Palestinian and Gazan and describing her public advocacy.

355. Plaintiff's disclosures included publications, interviews, and speaking engagements concerning Palestinians and Gaza.

356. After learning of Plaintiff's protected activities, Arab identity, and Palestinian identity, Defendant materially changed its treatment of Plaintiff.

357. Defendant ceased ordinary communications with Plaintiff.

358. Defendant excluded Plaintiff from onboarding and employment-related communications sent to similarly situated incoming associates.

359. Defendant scrutinized Plaintiff differently from similarly-situated employees outside of her protected classes and applicants who did not engage in comparable protected activity.

39

360. On or about July 10, 2024, Defendant terminated Plaintiff's employment and contractual relationship.

361. Defendant's stated reason for terminating Plaintiff was false, pretextual, and not honestly believed.

362. Plaintiff further engaged in protected activity by protesting her termination and challenging Defendant's stated justification for its actions.

363. Plaintiff complained to Defendant's Chief Human Resources Officer and General Counsel that Defendant's actions were wrongful and unsupported.

364. Defendant nevertheless reaffirmed and maintained Plaintiff's termination.

365. Plaintiff's protected activity was a but-for cause of Defendant's adverse actions against her.

366. Defendant intentionally retaliated against Plaintiff for engaging in activity protected by 42 U.S.C. §1981.

367. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered loss of employment, loss of future earnings and benefits, emotional distress, humiliation, reputational harm, and other compensatory damages.

368. Defendant acted intentionally, willfully, maliciously, and/or with reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and award all relief available under 42 U.S.C. §1981, including but not limited to:

a. Back pay, front pay, lost benefits, and other actual damages;

b. Compensatory damages;

c. Punitive damages;

d. Pre- and post-judgment interest;

e. Attorneys' fees and costs;

f. Injunctive and equitable relief as permitted by law; and

g. Such other and further relief as this Court deems just and proper.


Respectfully Submitted,

YASMEEN ELAGHA
*Plaintiff*

By:


/s/ Christina Abraham


Christina Abraham, Esq.
Abraham Law and Consulting, LLC
33 North Dearborn, Suite 1000
Chicago, IL 60602
(312) 588-7150
Christina.w.abraham@gmail.com


Waleed Naser, Esq.
Naser Legal, LLC
155 N. Wacker Dr. Suite 4250
Chicago, IL 60606
Office: 312-248-2501
Direct: 872-265-8490
waleed@naserlegal.com


Farah Chalisa, Esq.
155 N. Wacker Dr. Suite 4250
Chicago, IL 60606
Tel: 224-392-7822
farah@naserlegal.com


Issam Bahour, Esq.*
Bahour Law, PLLC
3200 West End Suite 500
Nashville, Tennessee 37203
P: 629.337.4840
E: issam@bahourlaw.com


41

\* Request for NDIL Admission Pending

*Attorneys for Plaintiff*

May 11, 2026